UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BUFKIN ENTERPRISES LLC** | **CASE NO. 2:21-CV-04017** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INDIAN HARBOR INSURANCE CO ET AL** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Stay Litigation (Doc. 7) by General Security Indemnity Co of Arizona, Indian Harbor Insurance Co, Lexington Insurance Co, Old Republic Union Insurance Co, Q B E Specialty Insurance Co, Safety Specialty Insurance Co, Steadfast Insurance Co, United Specialty Insurance Co (Doc. 7), wherein Defendants move the Court to send the cases to arbitration in New York. Plaintiff Bufkin Enterprises LLC opposes the motion. Doc. 13. Defendants have replied. Doc. 19.

### I. BACKGROUND

This suit arises from an insurance coverage dispute following damage caused by Hurricane Laura on August 27, 2020, to properties[1] owned by Plaintiff. Doc. 1-3, pp. 1–3.

---

[1] University Square Apartments: 612 Cusic St., Lake Charles LA 70607; 613 Cusic St., Lake Charles LA 70607; 615 Cusic St., Lake Charles LA 70607; 617 Cusic St., Lake Charles LA 70607; 618 Cusic St., Lake Charles LA 70607; 619 Cusic St., Lake Charles LA 70607; 4308 Auburn St., Lake Charles LA 70607; 4312 Auburn St., Lake Charles LA 70607; 4316 Auburn St., Lake Charles LA 70607; 4324 Auburn St., Lake Charles LA 70607;4328 Auburn St., Lake Charles LA 70607; 4340 Auburn St., Bldg. A, Lake Charles LA 70607; 4340 Auburn St., Bldg. B, Lake Charles LA 70607; 4340 Auburn St., Bldg. C, Lake Charles LA 70607; 4340 Auburn St., Bldg. D, Lake Charles LA 70607; 4340 Auburn St., Bldg. E, Lake Charles LA 70607; 4340 Auburn St., Bldg. F, Lake Charles LA 70607; 4340 Auburn St., Bldg. G, Lake Charles LA 70607; and 4340 Auburn St., Bldg. H, Lake Charles LA 70607.

On May 15, 2020, the Plaintiff purchased a surplus lines insurance policy issued by the following ten insurance companies: Certain Underwriters at Lloyd's, London; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Safety Specialty Insurance Company; HDI Global Specialty SE; and Old Republic Union Insurance Company. Doc. 7-3, p. 3. Plaintiff's insurance agent, which negotiated the terms of the policy coverage for Plaintiff's properties, is McElveen Insurance, L.L.C. ("McElveen"), located in Lake Charles, Louisiana. Doc. 13-6. McElveen used AmWINS Brokerage of Florida, Inc., a Florida-based surplus lines insurance broker that is licensed in Louisiana. Docs. 7-3, p. 1; 13-6, p. 2. Doc. 13-6. The Policy was published by AmRisc, LLC, in Houston, Texas, which placed the policies with the ten issuing insurance companies, *supra*, pp. 1–2. Doc. 7-3, pp. 1, 128. The Policy was delivered from McElveen to Bufkin via email on August 4, 2020. Doc. 13-6.

The Policy Document contains the terms of coverage as to all the individual issuing companies. Doc. 7-3. It states:

> This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific types of policies issued by insurance companies authorized to do business in Louisiana.

*Id.* at 127. The Declarations Page lists individual policy numbers as to each ten insurers.

*Id.* at 1. The Contract Allocation Endorsement provides the following:

> This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

*Id.* at 4 (Per the Contract Allocation Endorsement, "Underwriters" is synonymous with "Insurers" and "Company."). Further, the Contract Allocation Endorsement states:

> The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

*Id.* The Policy Document contains an Arbitration Clause, which states:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

*Id.* at 37.

Separate from Section VII's Conditions Section's Arbitration Clause, the Policy Document includes endorsements that state: "THIS ENDORSEMENT CHANGES THE

POLICY. PLEASE READ IT CAREFULLY." *Id.* at 77, 78, 88, 95,102. For example, the Underwriters' Service of Suit Endorsement states: "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured) will submit to the jurisdiction of a Court of competent jurisdiction within the United States." *Id.* at 77. There are similar Endorsements for the other insurers. *Id.* at 78, 80, 88, 90, 95, 102.

    The individual policies covered the Plaintiff's properties from May 15, 2020, to May 15, 2021, and were effective at the time of loss on August 27, 2020. Doc. 1-3, p. 3. After Hurricane Laura, Plaintiff reported a loss to the insurers. *Id.* at 4, doc. 7-1, p. 8. Some payments were made to Plaintiff, but a disagreement ensued as to amounts outstanding. Doc. 1-3, pp. 5–6; doc 7-1, p. 9. Plaintiff then brought suit on October 11, 2021, in the 14th Judicial District Court, Calcasieu Parish, Louisiana, against the eight domestic insurers named in the Policy.[2] Doc. 1-3, pp. 1–2. Plaintiff raised claims for declaratory relief and damages as a result of breach of contract and violations of Louisiana Revised Statutes sections 22:1892, 22:1973. *Id.* at 6–8. On November 18, 2021, Plaintiff filed a supplemental and amended petition to add Certain Underwriters at Lloyd's, London, and HDI Global Specialty SE ("foreign insurers") and thereafter moved to dismiss them with prejudice under each of their insurance contracts with Plaintiff. Doc. 13-2, p. 12. The same day, the 14th Judicial District Court granted the motion and dismissed all claims against the

---

[2] Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Safety Specialty Insurance Company; and Old Republic Union Insurance Company.

foreign insurers with prejudice. *Id.* at 17. On November 19, 2021, Defendants removed the case to this Court under federal question and diversity jurisdiction. Doc. 1., p. 3.

## II. LAW & ANALYSIS

Louisiana law prohibits arbitration agreements in insurance policies covering property within the state. La. R.S. § 22:868(A)(2). Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. Accordingly, McCarran-Ferguson allows state laws like Louisiana Revised Statute section 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006). However, this "reverse preemption" applies only to "Acts of Congress" and not to treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 723 (5th Cir. 2009). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") is one such treaty and requires signatory nations to "'recognize an agreement in writing under which the parties undertake to submit to arbitration' their dispute 'concerning a subject matter capable of settlement by arbitration.'" *Id.* at 719 (quoting Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. II(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3)). State insurance law thus has no impact on arbitration agreements arising under the Convention. *Id.* at 723–24; *see also McDonnel Group, LLC v. Great Lakes Ins. Branch SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019).

Defendants contend that the Arbitration Clause must be enforced for the following reasons: the Arbitration Clause remains enforceable under the Convention, *i.e.*, the Convention even applies to domestic insurers; the Arbitration Clause must be enforced under the FAA; Louisiana Revised Statutes section 22:868 provides no basis for reverse-preemption under McCarran-Ferguson because it does not apply to surplus lines polices; and the Service of Suit Endorsements do not supersede the Arbitration Clause. Bufkin counters that the Convention does not apply because the defendants are wholly domestic insurers; that Louisiana Revised Statutes section 22:868(A) is still an anti-arbitration provision applicable to surplus lines policies; and, in the alternative, that the Service of Suit Endorsements change the Policy related to arbitration. Each argument is taken in turn.

### A. Whether the Convention compels arbitration

Defendants argue that the Convention applies because at least one of the parties to the arbitration agreement itself is a citizen of a foreign signatory country. Doc. 7-1, p. 16. Bufkin maintains that its claims are against domestic insurers that do not have valid arbitration agreements and that those domestic insurers therefore cannot be compelled to arbitrate under the Convention. Doc. 13, p. 9.

As an initial matter, in Defendants have relied on the 1983 Supreme Court case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* for the proposition that the United States, as evidenced by the FAA, has a strong, liberal policy favoring arbitration agreements. Doc. 7-1, pp. 13–14. In 2022, the Supreme Court clipped the wings of the oft quoted "strong federal policy favoring arbitration" created by the FAA, explaining that the

FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–13 (2022) ("Nine circuits, including the Eighth, have invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two circuits have rejected that rule. We do too."). Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA.

In the Fifth Circuit, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (collecting cases) (internal quotations omitted).

Here, the Policy's Contract Allocation Endorsement states that "[t]his contract shall be construed as a separate contract between the Insured and each of the Underwriters." Doc. 7-3, p. 4. In *Port Cargo Service, LLC v. Certain Underwritings at Lloyd's*, the policy at issue also contained a contract allocation endorsement from which the district court determined that the insureds could not be compelled by the Convention to arbitrate their claims against the domestic insurers because they failed *Freudensprung*'s fourth prong. No. CV 18-6192, 2018 WL 4042874, at *6 (E.D. La. Aug. 24, 2018) ("Although the

insurance contracts between plaintiffs and the domestic insurers fit the first three criteria for compelling arbitration under the Convention, the parties to those contracts are all America citizens. Therefore, plaintiffs cannot be compelled by the Convention to arbitrate their claims against the domestic insurers."). Similarly, the polices in the instant matter are contracts between Bufkin and eight domestic insurers. Unlike the defendants in *Port Cargo*, however, which also included contracts with two foreign insurers, the foreign insurers in this matter have been dismissed with prejudice. Because each of the eight insurers here has a separate contract with the insured and which no party to the agreement is not an American citizen, under *Freudensprung*, Bufkin cannot be compelled by the eight domestic insurer Defendants to arbitrate under the Convention. Additionally, because *Port Cargo* came to this conclusion notwithstanding two foreign insurer defendants, the rationale applied by the court in *Port Cargo* applies even more strongly.

Defendants also raise the theory of equitable estoppel and argue that it "applies with equal force here." Doc. 7-1, p. 18; *Port Cargo*, 2018 WL 4042874, at *6–7. This reasoning relies on the Fifth Circuit's holding in *Grigson v. Creative Artists Agency L.L.C*, which adopted the Eleventh Circuit's intertwined-claims test allowing a nonsignatory to compel arbitration under equitable estoppel in situations. 210 F.3d 524, 527 (5th Cir. 2000). The first situation when equitable estoppel applies is

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the

> signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* Here, much like the matter in *Port Cargo*, Bufkin's claims against the domestic insurers do not rely on its contracts with the foreign insurers because the Contract Allocation Endorsement specifically states that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters." Doc. 7-3, p. 4. Therefore, the Arbitration Clause that could invoke the Convention with a foreign insurer is separate and distinct from the Arbitration Clause with domestic insurers that cannot. The first *Grigson* situation does not apply. *See Port Cargo*, WL 4042874, at *7 ("[P]laintiffs do not directly rely on the terms of the written agreements containing the arbitration clause that arises under the Convention in asserting their claims against the nonsignatories to those contracts, *i.e.*, the domestic insurers.").

> As to the second *Grigson* situation,
>
> equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson*, 210 F.3d at 527. In *Grigson*, a non-insurance, non-Convention case, the Fifth Circuit determined that the plaintiffs' claims in two actions "are intertwined with, and dependent upon, the distribution agreement, including, but not limited to, Defendants (non-signatories) and TriStar (non-defendant signatory) being charged with interdependent and

concerted misconduct." *Id.* at 531. The Court pointed out that although the signatory[3] was no longer a defendant, having been dismissed without prejudice from an earlier action, the current action and the earlier action "are the same. In essence, [the signatory] is a defendant." *Id.* at 530. Here, however, the two foreign signatory defendants were dismissed with prejudice. Doc. 13-2, p. 17.

Likewise, in *Port Cargo*, under the second *Grigson* situation, the court compelled arbitration holding that "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Port Cargo*, 2018 WL 4042874, at *7. There the plaintiffs "allege[d] that the[] insurers all breached the terms of the policy together through the shared adjustor" and those insurer defendants included both nonsignatory domestic insurers and signatory foreign insurers. 2018 WL 4042874, at *7. Here, however, all of Bufkin's claims against the foreign signatory insurers are barred by *res judicata*. In all, Bufkin's claims are against only nonsignatories to the Arbitration Clause and are not interdependent on any claims against signatories; thus, equitable estoppel is not warranted. Accordingly, the Convention does not apply, and arbitration can only be compelled through the FAA. The Court thus considers whether clauses are reverse preempted by Louisiana Revised Statutes section 22:868.

---

[3] Here signatory refers to an arbitration clause in the contract between the plaintiff and TriStar. By contrast, in the instant matter and in *Port Cargo*, signatory refers to an agreement to arbitrate under the Convention.

**B. Whether the La. R.S. § 22:868 provides grounds for reverse-preemption**

Louisiana Revised Statutes section 22:868 states:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:

(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.

(2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

Defendants argue that Louisiana Revised Statutes section 22:868(A)(2) does not apply to the surplus lines polices between defendant insurers and Bufkin; consequently, Louisiana law neither reverse-preempts the FAA nor prohibits enforcement of the

Arbitration Clause. Doc. 7-1, pp. 24–25. Bufkin on the other hand argues that Section 22:868(A)(2)'s anti-arbitration effect remains unaltered by the 2020 amendment. Doc 37, p. 28–30.

On June 12, 2020,[4] the Louisiana legislature amended Section 22:868 to include Subsection D, which states: "The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." Additionally, the Louisiana legislature added "venue" to the title of the revised statute as well as "or venue" to subsection (A)(2), which now states: "Depriving the courts of this state of the jurisdiction *or venue* of action against the insurer." Prior to the 2020 amendment, Louisiana courts held Section 22:868(A)(2) to reverse-preempt the FAA under McCarran-Ferguson; that is, it was treated as an anti-arbitration provision. *E.g.*, *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable under R.S. 22:629.") (La. R.S. § 22:629 was retitled La. R.S. § 22:868.).[5]

---

[4] 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West).
[5] *See also Macaluso v. Watson*, 171 So.2d 755 (La. App. 4 Cir. 1965) (holding an arbitration agreement between and insurer and insured was void and unenforceable because it has the effect of depriving a court of jurisdiction to decide the issue of liability as well as quantum."); *Courville v. Allied Professionals Ins. Co.*, 218 So.3d 144, 148 (La. Ct. App. 1st Cir. 2017), *writ denied*, 228 So.3d 1223 (La. 2017) ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."); *Hobbs v. IGF Ins. Co.*, 834 So.2d 1069, 1071 (La. Ct. App. 3d Cir. 2002) ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer.").

The question now is whether the text of Section 22:868(D), which addresses forum or venue selection clauses, extends to cover arbitration clauses. This question has not been ruled on by the Louisiana Supreme Court, therefore United States District Courts "must make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would decide." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir.1999)). The "fundamental question in all cases of statutory interpretation is legislative intent and that the rules of statutory construction are designed to ascertain and enforce that intent." *Carollo v. Dep't of Transportation & Dev.*, 346 So.3d 751, 759 (La. 2022) (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So.2d 16, 26–27 (La. 2008)).

> The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in the search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

*Id.* at 759–760 (cleaned up).

1. **Creekstone Juban**

Before diving into the text Section 22:868, its necessary to put some context around the amendment. On May 8, 2019, the Louisiana Supreme Court decided *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.* where the issue before the court was "whether La. R.S. 22:868(A)(2) prohibits the enforcement of the forum selection clause in dispute." 282

So.3d 1042, 1044 (La. 2019). The pre-amendment text of Section 22:868(A)(2) stated: "Depriving the courts of this state of the jurisdiction of action against the insurer." 2020 La. Sess. Law Serv. Act 307 (S.B. 156) (West). The court observed that the Louisiana Code of Civil Procedure article 1 "defines 'jurisdiction' as 'the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.'" *Creekstone Juban*, 282 So.3d at 1047. Furthermore, the court explained that jurisdiction and venue are distinct legal concepts: "If jurisdictional requirements are met, courts throughout the state have the legal power and authority to hear the case; however, *not all courts with jurisdiction are in the proper venue.*" *Id.* (emphasis in original) (quoting *Turner v. Leslie*, 684 So.2d 395, 396 (La. 1996)). The Louisiana Supreme Court concluded that "where the parties have contracted for a particular forum or venue for litigating disputes, this does not mean they have deprived the courts of this state of the legal authority to hear the dispute (*i.e.*, the jurisdiction)." *Id.* Accordingly the Louisiana Supreme Court "decline[d] to extend the definition of "jurisdiction"—which is clearly defined in the Civil Code—to include "venue" or "forum." *Id.*

*Creekstone Juban*'s majority opinion prescinds arbitration clauses from its jurisdictional discussion. Justice Weimer's concurrence, however, does not and is instructive. *See Id.* at 1051. He agreed that forum selection clauses did not deprive courts of jurisdiction but that arbitration clauses did. *Id.* at 1052. Furthermore, Justice Weimer observed that "[i]n 1948, shortly after passage of [McCarron-Ferguson], the Louisiana

Legislature took up Congress's invitation to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code" and that Louisiana "cases decided after the enactment of [the predecessor to La. R.S. § 22:868] have confirmed its purpose as an anti-arbitration statute." *Id.*

2. ***Circumstances contemporary with amendment to Section 22:868***

Under "the terse and admirable maxim of the civil law, '[c]ontemporanea expositio est fortissima in lege,'" *e.g.*, *State ex rel. Cunningham v. Bd. of Assessors of Par. of Orleans*, 52 La. Ann. 223, 238, 26 So. 872, 879 (1898), a statute must be considered in the light of all circumstances existing at the time of its enactment. In February 2020, just shy of ten months after *Creekstone Juban*, Louisiana Bill Digest indicated a proposed change to Section 22:868, *i.e.*,

> Present law provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of jurisdiction of action against the insurer.
>
> Proposed law provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of **venue or** jurisdiction of action against the insurer.

Louisiana Bill Digest, Original, 2020 Reg. Sess. S.B. 156 (emphasis added). Thus, a proposed inclusion of "venue" into Section 22:868 arose shortly after the Louisiana Supreme Court in *Creekstone Juban* reversed the trial court's denial of exception of improper venue, holding that pre-amendment Section 22:868 did not prohibit enforcement of a forum selection clause. 282 So.3d at 1044, 1050. The effect of Section 22:868 pre-amendment and post-*Creekstone Juban* was to preclude enforcement of arbitration clauses

but not preclude forum and venue selection clauses because the former are jurisdictional whereas the latter are not. *See Creekstone Juban*, 282 So.3d at 1047 ("[Section 22:868's] plain language addresses jurisdiction only and forum selection clauses do not deprive the Louisiana court of jurisdiction over the action.").

### 3. Section 22:868's post-amendment effect

When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision must be applied as written, with no further interpretation made in search of the legislature's intent." *Auricchio v. Harriston*, 332 So.3d 660, 662–63 (La. 2021); La. Civ. Code art. 9; R.S. § 1:4 (2023). The added Section 22:868(D) provides: "The provisions of Subsection A of this Section shall not prohibit *a forum or venue selection claus*e in a policy form that is not subject to approval by the Department of Insurance." The subject of Subsection D's clause, "[t]he provisions of Subsection A," includes (A)(2)'s anti-arbitration provision. Subsection D's clause's active verb is "shall not prohibit." The objects of Subsection D's clause, "a forum or venue selection clause" thus carve out only a part of the Subsection A's prohibitory effect. Consequently, based on the clear nature of the text, the Court's interpretation of Subsection D is that its prohibitive effect on Subsection A is limited to only forum and venue selection clauses in surplus lines policies. What remains of Subsection A's effect post-amendment is the full extent of the law pre-*Creekstone Juban* minus forum and venue selection clauses found in surplus lines polices. Based on the text of Section 22:868, the Court cannot, as the Defendants argue with scant support, arrive at an interpretation that conflates arbitration clauses with forum

and venue clauses; the former is jurisdictional whereas the latter are not. Thus, to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators.

### 4. *The Policy was delivered in Louisiana*

Defendants claims that the Policy was not delivered or issued for delivery in Louisiana because it was printed in Houston and then delivered to Bufkin's surplus lines broker in Florida. Doc. 7-1, p. 25. Bufkin responds that the Policy was delivered to the insured in Louisiana and that Defendants fail to mention receipt by the Bufkin or its agent. Doc. 13, p. 19. Louisiana Revised Statutes section 22:868 applies to only "insurance contract[s] delivered or issued for delivery in [Louisiana] and covering subjects located, resident, or to be performed in [Louisiana]. "Delivery" is defined as

> [s]ubject to the insurer's requirements as to payment of premium, every policy shall be delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance. Delivery may be by the United States Postal Service, personal delivery, private courier, or by electronic transaction.

La. R.S. § 22:873(A) (2023).

Defendants support their claim of delivery outside of Louisiana with *McDermott International, Inc. v. Lloyds Underwriters*, 120 F.3d 583, 588 (5th Cir. 1997), where they assert the Fifth Circuit "[found] that policy was delivered in London when it was sent to the insured's agent in London." Doc. 34, p. 6. The Fifth Circuit in *McDermott* also observed that "it is . . . well-settled that delivery orchestrated to avoid the application of Louisiana law will not be sanctioned." *McDermott*, 120 F.3d at 587. Bufkin's insurance agent, which

is located in Lake Charles, delivered the Policy to Bufkin via email on August 4. The Court finds the Policy was delivered in Louisiana: either to Bufkin's agent or Bufkin. *See* La. R.S. §§ 22:868, 22:873; *McDermott*, 120 F.3 at 588.

5. *Summary*

The Arbitration Clauses at issue are reverse-preempted by Louisiana Revised Statutes section 22:868(A)(2). *See, e.g.*, *Am. Bankers Ins. Co. of Fla.*, 436 F.3d 490. Therefore, the Court need not address Bufkin's argument that the Endorsements changed the Policy to the detriment of the Arbitration Clauses.

### III. CONCLUSION

For the aforesaid reasons,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and Stay Litigation (Doc. 7) be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 7th day of March, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**